IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DYRON JACKSON, JR.,                          :

     Petitioner,                             :

         v.                                  :          Civil Action No.: DKC-22-3118

GREGORY A. WARNER and                        :
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,                           :

     Respondents.                            :

## MEMORANDUM OPINION

Dyron Jackson, Jr., Petitioner, a Maryland State prisoner, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. ECF No. 1 (the "Petition"). Respondents Warden Gregory A. Warner and the Maryland Attorney General filed an answer to the Petition, asserting that the claims are either procedurally defaulted, non-cognizable, or lack merit. ECF No. 11. No hearing is required to resolve the matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2025); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons below, the Petition is denied and a certificate of appealability shall not issue.

## I.    Background

On October 15, 2018, Mr. Jackson was indicted in the Circuit Court for Baltimore City and charged with attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, reckless endangerment, and related firearm offenses. ECF No. 11-1 at 4-

5. From May 1-6, 2019, Mr. Jackson was tried by a jury. The following evidence was adduced at trial, as recounted by the Appellate Court of Maryland ("Appellate Court"):[1]

> In the evening hours of July 20, 2018, Derrell Coakley was sitting in the driver's seat of a parked vehicle when he observed a group of people standing near where his car was parked. Shortly thereafter, Mr. Coakley moved his vehicle from its parking spot toward the crowd of people. As Mr. Coakley continued driving, shots were fired, and Mr. Coakley suffered multiple gunshot wounds. Mr. Coakley then drove to the hospital, where he was treated. Approximately thirty minutes after the shooting, an individual, later identified as Mr. Jackson, placed a telephone call to an individual whose telephone had been wiretapped by the Drug Enforcement Agency subject to a wiretap order issued by a federal district court in an unrelated case. During that call, which was recorded, the individual identified as Mr. Jackson made statements implicating himself in the shooting of Mr. Coakley. That recording was later forwarded to the Baltimore City Police Department. Mr. Jackson was ultimately arrested and charged…

ECF No. 11-1 at 116-117.

Mr. Jackson was convicted of first-degree assault, use of a handgun in the commission of a crime of violence, wearing, carrying or transporting a handgun, and possession of a regulated firearm by a prohibited person. ECF No. 11-6 at 64-65. Sentencing was held on September 9, 2019. The circuit court sentenced Mr. Jackson to an aggregate 25 years' imprisonment. ECF No. 11-7 at 25.

Mr. Jackson appealed his conviction to the Appellate Court. ECF No. 11-1 at 7. He asserted three grounds, as follows: (1) the court below erred by denying [Mr. Jackson's] motion to suppress evidence of an intercepted telephone conversation, (2) the trial court abused its discretion by admitting evidence contained in a telephone conversation recorded after [Mr.

---

[1] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. And the voters also approved changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.

Jackson's] arrest, and (3) the evidence is legally insufficient to sustain [Mr. Jackson's] convictions. *Id.* at 11. On August 19, 2020, the Appellate Court affirmed the convictions and sentence. *Id.* at 115-130. The Supreme Court of Maryland denied Mr. Jackson's subsequent petition for a writ of certiorari. *Id.* at 131-134, 139.

Mr. Jackson filed his federal Petition on December 1, 2022. ECF No. 1. He asserts the same three grounds for relief urged in his direct appeal: (1) did the trial court correctly deny my motion to suppress, (2) did the trial court properly exercise its discretion in admitting a recorded phone call, and (3) is the evidence considered sufficient to support my conviction? *Id.* at 6.

## II.    Standard of Review

The Petition seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. This court may grant a petition for a writ of habeas corpus only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). As the Fourth Circuit explained in *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), "it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Indeed, "Federal courts owe state tribunals 'significant deference' with respect to 'their determination that a state prisoner isn't entitled to habeas relief.'" *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir. 2022) (citation omitted).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "reviewing a habeas petition that has already been adjudicated on the merits in state court [must] give considerable deference to the state court decision." *Nicolas v. Att'y Gen. of*

*Maryland*, 820 F.3d 124, 129 (4th Cir. 2016). If a state prisoner's claim has already been adjudicated on its merits, § 2254 restricts federal habeas relief to limited circumstances.

Under 28 U.S.C. § 2254(d)(1), the prisoner must show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). And, under § 2254(d)(2), the writ may be granted as to a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The Supreme Court has explained, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., delivering the majority opinion with respect to Part II):

> [A] state-court decision can involve an "unreasonable application" of [the Supreme] Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application ... if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case. Second ... if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Therefore, a federal court is precluded from granting habeas corpus relief "'on a claim decided on the merits in a state court unless it determines the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence.'" *Crockett*, 35 F.4th at 235; *see Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693–94 (2002); *Williams*, 529 U.S. at 379.

A § 2254 petition must set forth specific grounds for relief. *Samples v. Ballard*, 860 F.3d 266, 273 (4th Cir. 2017); *see also Folkes v. Nelsen*, 34 F.4th 258, 267 (4th Cir. 2022). Claims by a state prisoner that they are in custody in violation of the Constitution or the laws of the United

States "implicate concerns about federalism and comity[."] *Crockett*, 35 F.4th at 241. Concerns of comity and federalism "reach their apex" when a state court has previously ruled on an alleged wrongful conviction. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020). Therefore, "the standard for such claims is exceedingly high." *Crockett*, 35 F.4th at 241; *see Burt v. Titlow*, 571 U.S. 12, 19 (2013). Indeed, the Fourth Circuit has characterized the habeas standard as "an extraordinary standard of review." *Crockett*, 35 F.4th at 235.

Of import, "[t]he State possesses primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to State convictions." *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (internal quotation marks and citations omitted). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). Therefore, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams*, 529 U.S. at 383; *see Walters v. Martin*, 18 F.4th 434, 441 (4th Cir. 2021). Accordingly, the habeas court may not disturb a state court judgment "absent an error that lies 'beyond any possibility for fair-minded disagreement.'" *Mays v. Hines*, 592 U.S. 385, 386 (2021) (per curiam) (citations omitted); *see Walters*, 18 F.4th at 441.

In assessing a petitioner's habeas claims, the district court looks to the opinion of "'the last reasoned decision of a state court addressing the claim.'" *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)), *cert. denied sub nom. Chestnut v. Allen*, 143 S. Ct. 2517 (2023). And, the federal court's review of a state court

decision under § 2254 is conducted "through a narrow lens . . . ." *Mahdi v. Stirling*, 20 F.4th 846, 854 (4th Cir. 2021). It requires a review of "the record in its entirety," as it existed before the last state court to consider the matter. *Id.*; *see Mays*, 592 U.S. at 392; *Hyman v. Hoekstra*, 41 F.4th 272, 274 (4th Cir. 2022).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364–65; *see* 28 U.S.C. § 2254(d)(1). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.

To obtain relief, the petitioner must identify the "clearly established" legal principle on which they rely. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). And, the holding must be described with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). A holding at a "high level of generality" will not suffice. *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *see Metrish v. Lancaster*, 569 U.S. 351, 367–68 (2013). Moreover, circuit precedent cannot turn "'a general principle of Supreme Court jurisprudence into a specific legal rule'" that has not been "announced" by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme

Court" case but nevertheless arrived at the opposite result. *Williams*, 529 U.S. at 405; *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). However, a federal habeas court "'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'" *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411).

Rather, the state court's application of federal law "must also be unreasonable." *Lovitt*, 403 F.3d at 178; *see Nicolas*, 820 F.3d at 129 (The court "cannot disturb the State court's ruling simply because it is incorrect; it must also be unreasonable."); *Barnes*, 751 F.3d at 238–39 (a state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts). Under § 2254(d)(1), to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not merely incorrect. *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020); *see White v. Woodall*, 572 U.S. 415, 419 (2014); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Section 2254(d)(2) of 28 U.S.C. requires a prisoner to show that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Crockett*, 35 F.4th at 241. Factual determinations are unreasonable when they are "'sufficiently against the weight of the evidence . . . .'" *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019), *as amended* (Feb. 5, 2019) (citation omitted). In other words, the "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is,

it is not 'debatable among jurists of reason.'" *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (emphasis in original) (internal citation omitted).

However, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (citation omitted); *see Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* This standard is "meant to be" one that is "difficult to meet…" *Harrington*, 562 U.S. at 102.

Of relevance, the habeas court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas*, 820 F.3d at 129; *see Harrington*, 562 U.S. at 100–01; *Walters*, 18 F.4th at 442; 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

The petitioner faces an additional hurdle if he alleges a trial court error that the State court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118.

*Brecht* requires a state prisoner seeking to challenge his or her conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of the trial. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S.

750, 776 (1946)).  A "'substantial or injurious effect or influence'" means "actual prejudice."  *See Brecht*, 507 U.S. at 637–38.  "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests."  *Brown*, 596 U.S. at 134 (emphasis in *Brown*, 596 U.S. 118).

In sum, to succeed on any of their trial error claims, a petitioner must convince this federal habeas court that there is "'grave doubt'" about "whether the trial error affected the verdict's outcome" (*id.* at 135–36) and demonstrate that every "fairminded jurist would agree that an error was prejudicial." *Id.* at 136.

As discussed in detail below, these standards foreclose Mr. Jackson's claims.

## III.    Procedural Default

Procedural default occurs when a habeas petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001), *aff'd,* 535 U.S. 162 (2002); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule."   *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted.").  As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing

*Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991), *holding modified by Martinez v. Ryan,* 566 U.S. 1 (2012)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings.  To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code (2020 Repl. Vol., 2024 Supp.), §§ 12-201, 12-301 of the Courts and Judicial Proceedings Article ("C.J.").  To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted, due within ten years of the date of sentencing. *See* Md. Code (2018 Repl. Vol., 2024 Supp.), §§ 7-101–7-103 of the Criminal Procedure Article ("C.P.").  After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109.  If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted.  C.J. § 12-202.

As noted, procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735).  Maryland law does not permit a second and successive state petition for post-conviction relief. *See* C.P. § 7-103(a).

Respondents argue that Ground Three, which asserts the evidence is insufficient to sustain the conviction, is procedurally defaulted because the Appellate Court dismissed the claim as unpreserved.  ECF No. 11 at 44-45.  The court agrees.  Maryland Law procedurally bars an appellant from asserting a sufficiency of evidence claim if a motion for judgment of acquittal on

10

the same grounds was not urged at trial.  *See Whiting v. State*, 160 Md. App. 285, 308 (2004), *aff'd,* 389 Md. 334 (2005).  The Appellate Court enforced this rule against Mr. Jackson.  ECF No. 11 at 128.  Accordingly, Ground Three is procedurally defaulted based on Maryland's independent and adequate state ground.  This is so even though the Appellate Court alternatively addressed the merits of Mr. Jackson's sufficiency of evidence claim.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (A decision which bases dismissal both on the merits and on an independent and adequate state law ground forecloses federal habeas review.).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time."  *Breard*, 134 F.3d at 620.

To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).  Such cases are generally limited to those for which the petitioner can show that

"a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default bar applies here.  Mr. Jackson was provided with an opportunity to respond to Respondents' procedural default defense.  ECF No. 12.  Mr. Jackson filed a Reply.  ECF Nos. 13, 14.  The only potentially viable excuse[2] Mr. Jackson asserts is a passing reference in an attachment, which the court liberally construes as asserting actual innocence.  ECF No. 14-1 at 1.

In *Schlup v. Delo*, the Supreme Court recognized that a showing of actual innocence can serve as a gateway, that is, such a showing may be utilized by a § 2254 petitioner to secure the adjudication of his otherwise defaulted constitutional claims."  *Schlup*, 513 U.S. 298.  Meeting this standard "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324.  New evidence encompasses "both evidence that became available only after trial and evidence unavailable or excluded at trial."  *Wolfe v. Dotson*, No. 24-6840, 2025 WL 1859732, at *12 (4th Cir. July 7, 2025).  The petitioner must also "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice."  *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012).

Mr. Jackson attaches an excerpt from the victim, Derrell Coakley's trial testimony to support his claim of actual innocence.  ECF No. 14-1 at 2-8.  In these pages, Mr. Coakley does not identify Mr. Jackson, or anyone else as the person who shot him.  *Id.*  The evidence does not

---

[2] Mr. Jackson also makes frivolous arguments that the concept of procedural default should not be recognized by the court.  ECF Nos. 13, 14.

qualify as "new" because it was evidence heard by his jury. Moreover, Mr. Jackson cannot establish that no reasonable juror would find him guilty if they heard this evidence. Mr. Jackson's jury heard this evidence, along with all other inculpatory trial evidence, and unanimously found him guilty. Mr. Jackson has failed to meet the stringent standard for actual innocence, he cannot not pass through the gateway, and Ground Three is procedurally defaulted. In any event, as discussed below, even if Ground Three was not procedurally defaulted, it would be dismissed for lack of merit.

## IV.    Discussion

### A.    Ground One

In Claim One, Mr. Jackson contends that he is entitled to habeas relief because his motion to suppress a recorded telephone call should have been granted. On April 30, 2019, Mr. Jackson's trial counsel argued a motion to suppress a recorded telephone call the state sought to introduce at trial. ECF No. 11-2. The call, on which Mr. Jackson's voice is heard, was incidentally intercepted by a DEA task force through a federal wiretap on a third party's telephone. ECF No. 11-4 at 64-94, 214. Mr. Jackson's counsel argued that the call should be suppressed because the state failed to follow the federal wiretap statute, 18 U.S.C. § 2518, which requires timely disclosure and strict compliance. ECF No. 11-2 at 18-19, 25, 43. Mr. Jackson's counsel argued that the state's disclosure of the wiretap documents the first day the trial was originally scheduled to begin was not strict compliance with the statute. *Id.* at 31. The state argued that Mr. Jackson was not prejudiced because his counsel was in possession of the contents of the phone call through discovery disclosures and Mr. Jackson did not have standing to challenge the wiretap because he was not the target of the DEA investigation. *Id.* at 37. The trial court denied the motion to

suppress, ruling that the state made a good faith effort to comply with 18 U.S.C. § 2518 and Mr. Jackson lacked standing. *Id.* at 63-67.

The only aspect of the trial court's ruling that Mr. Jackson challenged on appeal was that he had no standing. ECF No. 11-1 at 124-126. The Appellate Court concluded that Mr. Jackson was a party to the recorded telephone conversation and, thus, had standing to challenge its admissibility. *Id.* However, the Appellate Court found that the error was harmless because the trial court also denied the merits of Mr. Jackson's motion to suppress. *Id.* at 126. The Appellate Court did not address the merits of the suppression motion, however, because Mr. Jackson did not raise any further objection to its denial.[3]

Respondents argue that Ground One is non-cognizable in federal habeas review. The court agrees. Mr. Jackson asserts that he is entitled to habeas relief based on a federal statute. In *Hill v. United States*, 368 U.S. 424 (1962), the Supreme Court defined the scope of habeas relief for non-constitutional violations of federal law:

> …a fundamental defect which inherently results in a complete miscarriage of justice…an omission inconsistent with the rudimentary demands of fair procedure…"exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

*Hill*, 368 U.S. at 428.

In *Hussong v. Warden, Wisconsin State Reformatory*, 623 F.2d 1185 (7th Cir. 1980), the Seventh Circuit was presented with the question of whether habeas relief was available pursuant to 28 U.S.C. § 2254 for violations of the federal wiretap statute. The Seventh Circuit found that Hussong's claim was non-cognizable because, "even if Hussong was convicted on the basis of evidence admitted in violation of the wiretap statute, his custody does not constitute 'a complete

---

[3] Respondents do not assert failure to exhaust or procedural default as a ground to reject this claim.

miscarriage of justice.'" *Id.* at 1191.  The Seventh Circuit characterized Hussong's claim as a "substantial violation of federal law," but "he was convicted on the basis of qualitatively unimpaired evidence even though it may have been tainted because of procedural irregularities." *Id.  See also Moore v. Nixon*, No. 3:14-CV-00247, 2018 WL 2009613, at *12 (M.D. Tenn. Apr. 30, 2018) (holding federal habeas relief non-cognizable in the context of a wiretap statute claim where the petitioner has received a full and fair hearing on his suppression motion in state court and offers no reason to believe the wiretap evidence was unreliable or that he is innocent of the crime of conviction); *Roberts v. Cate*, No. 11-CV-2869-L WMC, 2013 WL 3973079, at *2 (S.D. Cal. Aug. 1, 2013) (same).

The denial of Mr. Jackson's motion to suppress was not a "complete miscarriage of justice."  Mr. Jackson argued a mere technical violation of the federal wiretap statute because the state failed to comply with the timeline for disclosure.  ECF No. 11-2 at 17, 32.  The delay in disclosure from the state did not create a "miscarriage of justice."  Mr. Jackson was provided with a full and fair opportunity to brief and argue his motion to suppress but he was ultimately unsuccessful.

More to the point, Mr. Jackson's conviction is based on "qualitatively unimpaired evidence."  Mr. Jackson has not identified how the recorded phone call is unreliable, nor has he demonstrated that he is innocent.  A member of a DEA task force testified that the call was intercepted pursuant to a warrant obtained for a federal wiretap in connection with an investigation into a drug trafficking organization in Southern Baltimore.  ECF No. 11-4 at 64-65.  The task force heard the call while monitoring Sean Moore's phone and notified the Baltimore City Police Department.  *Id.* at 68, 108.

During the trial, the jury heard two phone calls from Mr. Jackson.  In the call the DEA intercepted, Mr. Jackson used language that could be fairly interpreted as an admission to shooting Mr. Coakley.  *Id.* at 90-94.  In the second recorded call, Mr. Jackson mentioned being detained over a wiretap and discussed someone named "yo" "aint telling."  *Id.* at 188–189.  Together, these calls established that Mr. Jackson admitted to shooting into Mr. Coakley's car and diminished the credibility of Mr. Coakley's testimony that he could not identify Mr. Jackson as the shooter.  Mr. Jackson's conviction, based on this evidence, cannot be construed as a "miscarriage of justice."

Ground One, a non-constitutional error based on a violation of the federal wiretap statute, is not the type of error that is cognizable on federal habeas review.  Ground One is dismissed.

### B.     Ground Two

In Ground Two, Mr. Jackson contends that the trial court erred in admitting the recorded call he made on October 7, 2018.  The state called Dennis Starkiewicz, an analyst from the Department of Public Safety and Corrections, to authenticate the phone call.  ECF No. 11-4 at 169-191.  Mr. Jackson made the call from jail, but that fact was concealed from the jury.  *Id.* at 169-183.  Mr. Starkiewicz testified that the call was made using an identification number associated with Mr. Jackson.  *Id.* at 186.  The state proceeded to play the call for the jury:

> MR. JACKSON:    — time, yo. Remember I was telling you about my cousin's situation and I was like, They might come grab me up for yo's shit?
> MALE VOICE:    Yeah.
> MR. JACKSON:    The whole time they did grab me for that shit, but they grabbed me on yo, on yo's shit, man. You heard me?
> MALE VOICE:    Yeah. So that's —
> MR. JACKSON:    For that shit that happened up there.
> MALE VOICE:    — why they —
> MR. JACKSON:    They got that shit — it was a phone — it was a phone conversation, wire tap.

| | |
|---|---|
| MALE VOICE: | Nah. I'm saying they — I'm saying, after they grabbed you, that's -- they tried to throw that other shit on you. |
| MR. JACKSON: | Yeah, yeah. And they got me and your picture, for real. |
| MALE VOICE: | They got me and your picture when we was up there? |
| MR. JACKSON: | Fuck outta here, Dave. I mean, fuck outta here, Big Quan. Yeah. When me and you posted that picture and we was -- yeah, that's the picture that they had out for my warrant. You heard me? |
| MALE VOICE: | Oh, yeah. |
| MR. JACKSON: | Shit crazy though, but yo ain't telling though. You heard me? |
| MALE VOICE: | He's not? |
| MR. JACKSON: | Nah. Yo told them he don't know who I am. Like, it's about to -- I told them I don't know yo. They told — yo — then yo told them they don't he don't know me. That's why I said it's just going to be a waiting process until a n**** go to trial for real. You feel me? |
| MALE VOICE: | Yeah. So, what, they — |
| MR. JACKSON: | I really doubt it. |
| MALE VOICE: | -- got come to court? |
| MR. JACKSON: | Yo, he gotta. He gotta come, bro. I'm trying to get somebody to holler at him and tell him he gotta come, yo. |
| MALE VOICE: | Oh, he gotta come? |
| MR. JACKSON: | Yeah, I want him to come. |
| MALE VOICE: | But you know how he can say that now. |
| MR. JACKSON: | I'm going to ask — I gotta wait 'til the lawyer come see me. |
| MALE VOICE: | No, I'm not talking about the lawyer. |
| MR. JACKSON: | What, bro? |
| MALE VOICE: | Bro, he'll -- bro. |
| MR. JACKSON: | Oh, as far as talking to bro? |
| MALE VOICE: | Yeah. |
| MR. JACKSON: | And your cousin? |
| MALE VOICE: | Yeah. |
| MR. JACKSON: | I mean, you — all right. That's what I'm calling you to do, but I really don't be trying to do that shit, yo. |
| MALE VOICE: | Yo. |
| MR. JACKSON: | I'm not with that shit. |
| MALE VOICE: | Huh? |
| MR. JACKSON: | I already don't be with that shit. Feel me? Trying to call and press down on them, press down on them (indiscernible), man. He's basically saying |

| | |
|---|---|
| MALE VOICE: | That's what they're trying – |
| MR. JACKSON: | He basically – |
| MALE VOICE: | -- to say, bro. Like, the |
| MR. JACKSON: | He basically saying they already basically saying shit. There's no way I should be calling a n**** to tell a n*** to press down because when I was home, n**** ain't have to call me and tell me to press down. |
| MALE VOICE: | Say that again for me, bro. |
| MR. JACKSON: | He said shouldn't be no way I would have to call and tell him to press down on yo because if Tayron was booked, I would be pressing down without yo even calling me telling me to do it. You feel me? |
| MALE VOICE: | Yeah. You shouldn't, bro. I mean, you shouldn't bro because you family. I don't even — when I pulled up there, bro, I was shocked, bro. I was shocked, but I don't know if n***** was lying to — I ain't ask n*****. I wasn't even out the car. Hey, I was in the car. I was dippin', for real. I wasn't even, you feel me, I wouldn't get out the car and holler at that n**** because I hopped out the car one time dapping everybody up, you feel me, and hopped back in the car. You feel me? I had all six dudes. |

ECF No. 11-4 at 188-191.

On direct appeal, Mr. Jackson argued that the evidence was not relevant because he was never identified as the person who made the call.  The Appellate Court disagreed:

> We hold that the recording was relevant. Although Mr. Jackson was never positively identified as the person speaking in the recording, the State presented evidence that the phone call was placed from an identification number associated with Mr. Jackson. Moreover, when the recording was played, the jury had already heard the recording of the intercepted call from the wiretap, and Detective Coffin had already identified Mr. Jackson's voice in that recording. From that, a reasonable inference could be drawn that Mr. Jackson made the call and that his voice matched the voice on the recording. *See Thomas v. State*, 372 Md. 342, 352 (2002) (noting that relevance may be established by inference). Given that the person in the recording made statements that could reasonably be construed as being related to the crime, the recording made the existence of a fact in consequence, namely, Mr. Jackson's guilt, more probable than it would have been without the evidence. Therefore, the recording was relevant.

ECF No. 11-1 at 126-127.

"[I]n considering federal habeas corpus issues involving state evidentiary rulings, [federal courts] do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (citation modified); *see also Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999) ("To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted") (citation modified).

At trial, Mr. Jackson's counsel objected to the relevance of the October 17, 2018, call because the speaker does not identify, "yo," and argued it was prejudicial because Mr. Jackson made the call at the Baltimore City Detention Center. ECF No. 11-4 at 138. The trial court ruled that the call was probative of the question of whether Mr. Jackson's voice was on the wiretap call and the credibility of Mr. Coakley's trial testimony. *Id.* at 154-155. The trial court permitted the admission of the call but required the state to redact any reference to the call's location. *Id.* at 155.

Mr. Jackson has failed to demonstrate that the admission of the October 17, 2018, call rendered his trial fundamentally unfair. He argues that the call should not have been admitted because the detective who testified he was familiar with his voice did not produce the tape of his police interview. ECF No. 1 at 9. But the state associated the October 17, 2018, call with Mr.

Jackson based on Mr. Stankiewitcz's testimony that the call was made with Mr. Jackson's authentication number.  ECF No. 11-4 at 185-186

The Appellate Court determined that the call was properly admitted pursuant to Maryland's evidentiary rules and Mr. Jackson has not identified how its admission infringed on a specific constitutional protection or rendered his trial fundamentally unfair.  Ground Two is without merit and is dismissed.

### C.    Ground Three

In Ground Three, Mr. Jackson contends that the evidence was insufficient to support his conviction.  As noted above, Ground Three is procedurally defaulted because Mr. Jackson failed to preserve it for review.  The Appellate Court alternatively found that the claim lacked merit:

> Assuming, arguendo, that the issue was preserved, we conclude that Mr. Jackson's arguments are without merit. "The test of appellate review of evidentiary sufficiency is whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Donati v. State*, 215 Md. App. 686, 718 (2014) (citing *State v. Coleman*, 423 Md. 666, 672 (2011)). That standard applies to all criminal cases, "including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitnesses' accounts." *Neal v. State*, 191 Md. App. 297, 314 (2010). Moreover, "the limited question before an appellate court is not whether the evidence should have or probably would have persuaded the majority of fact finders but only whether it possibly could have persuaded any rational fact finder.'" *Darling v. State*, 232 Md. App. 430, 465 (2017) (citations and quotations omitted) (emphasis in original). In making that determination, "[w]e 'must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [we] would have chosen a different reasonable inference.'" *Donati*, 215 Md. App. at 718 (citing *Cox v. State*, 421 Md. 630, 657 (2011)). Further, '[w]e defer to the fact finder's 'opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence[.]'" *Neal*, 191 Md. App. at 314 (citations omitted).
>
> Here, the evidence adduced at trial, when viewed in a light most favorable to the State, established that Mr. Coakley was shot while driving his Honda Accord a few blocks away from Mr. Jackson's mother's house. Approximately one hour later, Mr. Jackson was involved in a telephone conversation, which was recorded pursuant to a wiretap. In that conversation, which was played for the jury, Mr.

Jackson stated that he was "just sitting up there at [his] mother's" when he saw a "Honda" that had been "sitting there for like 20 minutes." Mr. Jackson also stated that he "grabbed the joint" and "slung that bitch." Detective Coffin testified that "joint" was a slang term for a firearm and "slinging" was a slang term for a shooting. Detective Coffin also testified that Mr. Jackson had admitted to being near his mother's house on the day of the shooting. Following his arrest, Mr. Jackson was involved in another recorded conversation, which was also played for the jury. During that call, Mr. Jackson referenced the phone conversation that had previously been intercepted by the wiretap.

Based on that evidence, a reasonable factfinder could have found beyond a reasonable doubt that Mr. Jackson was the person who shot Mr. Coakley. Accordingly, the evidence was sufficient to sustain the convictions.

ECF No. 11-1 at 129-130.

Sufficiency of the evidence is cognizable on collateral review; "however, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d at 405–06. Under *Jackson* [*v. Virginia*], evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In *Coleman*, 566 U.S. 650, the Supreme Court explained,

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4 ... (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively

unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862 ... (2010)).

*Coleman*, 566 U.S. at 651 (per curiam).  The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324.

In reviewing the sufficiency of the evidence, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Indeed, "to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Id.*; *see also United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983) (holding that federal habeas courts, when making a sufficiency-of-the-evidence determination, do not weigh the evidence or review the credibility of witnesses).

Even when "[r]easonable minds reviewing the record might disagree" about the state courts' rulings on sufficiency, "on habeas review that does not suffice to supersede" the state courts' rulings under the deference demanded by § 2254(d).  *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge, a federal habeas court must find that the state-court conclusion is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 338 (citing § 2254(d)(2)).  In making this determination, the federal court may not "use a set of debatable inferences to set aside the conclusion reached by the state court." *Id.* at 342.

Mr. Jackson argues that the evidence was insufficient to sustain his conviction because Mr. Coakley testified that Mr. Jackson was not in the group of people from where the shots originated.  ECF No. 1 at 10.  However, the state introduced two inculpatory phone calls.  The call recorded

on July 20, 2018, included statements that could be fairly interpreted as Mr. Jackson admitting to the shooting. The second call, recorded on October 7, 2018, could reasonably be interpreted as Mr. Jackson admitting that he made the wiretapped call, and that Mr. Coakley agreed not to identify him as the shooter at trial.

The Constitution does not require that all evidence presented to a jury be indicative of the defendant's guilt to sustain a conviction. The fact that Mr. Coakley was unable or unwilling to identify Mr. Jackson as the shooter is not *per se* proof that he is not guilty. It is the jury's task to assign weight and credibility to the evidence presented and ultimately reach a verdict. Considering the deference owed both to the jury and the Appellate Court of Maryland, the court finds that, even if Ground Three was not procedurally defaulted, it would be dismissed for lack of merit.

## V.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Mr. Jackson has failed to satisfy this standard on any of his claims.  Therefore, a certificate of appealability shall not issue.

## VI.     Conclusion

For the foregoing reasons, Mr. Jackson's Petition for Writ of Habeas Corpus is denied and a certificate of appealability will not be issued.

A separate Order follows.


<u>July 17, 2025</u>                                            _____/s/_____
                                                                DEBORAH K. CHASANOW
                                                                United States District Judge